# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| MARY MARGARET VETTER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MARGARET KEATE, an individual; CAMILLE DELONG, an individual; and EQUINE HOLDINGS, LLC, a Utah limited liability company,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09-cv-137-DB-PMW<br><br><br><br>District Judge Dee Benson<br><br>Magistrate Judge Paul M. Warner |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Mary Margaret Vetter's ("Plaintiff") motion to enforce a settlement agreement.[2] Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda. *See* DUCivR 7-1(f).

## BACKGROUND

On April 15, 2011, the parties entered into a settlement agreement, which was memorialized in handwriting ("Settlement Agreement"). In general, the Settlement Agreement

---

[1] *See* docket no. 38.

[2] *See* docket no. 104.

provides that Equine Holdings, LLC ("Equine Holdings") would pay Plaintiff $330,000. Specifically, it provides that an initial payment of $75,000 was to be made at "dismissal of [the] case" within thirty days; $255,000 was to be paid in quarterly payments and accruing simple interest at 7.5%; security was to be provided in the form of a first-position trust deed on a condominium in Palm Springs, California, owned by a member of Equine Holdings ("Palm Springs condominium"), or if such security did not exist, then security in "additional collateral"; and Plaintiff was to transfer her shares in Equine Holdings upon payment of the first $75,000.[3] The Settlement Agreement also provides that a particular horse would be returned by Margaret Keate ("Keate"), Camille DeLong ("DeLong"), and Equine Holdings (collectively, "Defendants")[4] to a nonparty, Diana Kahn.[5] The Settlement Agreement was signed by Plaintiff, Keate, and DeLong (both in her individual capacity and on behalf of Equine Holdings).

Subsequently, Plaintiff and Defendants exchanged drafts of final settlement documents. Eventually, Defendants sent a final draft of the those documents to Plaintiff ("Final Documents"). On May 31, 2011, Plaintiff executed the signature pages of the Final Documents and delivered them to Defendants, but Defendants have not executed the signature pages of the Final Documents. The Final Documents provide that Plaintiff was to transfer her shares in

---

[3] Docket no. 105, Exhibit 1.

[4] Although Keate is represented by different counsel than Equine Holdings and DeLong, all of those parties have opposed Plaintiff's motion to enforce. Accordingly, the court will treat Defendants as one group here.

[5] *See* docket no. 105, Exhibit 1.

Equine Holdings upon payment of the first $75,000.[6] The Final Documents also provide that Defendants would provide security in the form of a first-position trust deed on the Palm Springs condominium; however, they do not appear to provide any option for substitute or additional collateral.[7]

On June 1, 2011, Plaintiff's counsel received a wire transfer of $75,000 from Defendants for the benefit of Plaintiff. At approximately the same time, the horse referenced in the Settlement Agreement was successfully transferred to Diana Kahn. Despite receipt of the $75,000 payment, Plaintiff did not transfer her shares in Equine Holdings. According to Defendants, Equine Holdings has continued to make the settlement payments in accordance with the terms of both the Settlement Agreement and the unexecuted Final Documents.

At some later point, Defendants contend that they learned that the Palm Springs condominium was no longer available to secure Plaintiff's interest in the settlement payment stream. Defendants assert that, prior to that point, they believed in good faith that they would be able to use the Palm Springs condominium as collateral. After learning that the Palm Springs condominium was not available, Defendants claim that they secured alternate collateral in the form of a condominium owned by DeLong and offered it as collateral to Plaintiff as allowed by the Settlement Agreement. According to Defendants, Plaintiff has refused to accept this alternate collateral.

---

[6] *See id.*, Exhibit 5.

[7] *See id.*

**ANALYSIS**

In her motion, Plaintiff argues that the court should specifically enforce the Settlement Agreement and order Defendants to execute and deliver the Final Documents, including a secured promissory note and trust deed.[8]  Plaintiff also requests an award of her attorney fees and costs, pursuant to the terms of the Final Documents.

The court first addresses Plaintiff's argument that the court should order Defendants to execute and deliver the Final Documents. Plaintiff's bases this argument on rule 70(a) of the Federal Rules of Civil Procedure, which provides that

> [i]f a *judgment* requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done--at the disobedient party's expense--by another person appointed by the court.  When done, the act has the same effect as if done by the party.

Fed. R. Civ. P. 70(a) (emphasis added).  The court concludes that Plaintiff's reliance on rule 70(a) is misplaced.  The language of rule 70(a) clearly requires a judgment as a prerequisite for the rule to be applicable.  Because there is no judgment in this case, the court concludes that rule 70(a) is inapplicable here.  *See id*.

---

[8] Because the instant motion centers on a claim for breach of contract, the court applies the law of the state of Utah.  *See Mortensen v. Dazet*, No. 2:08-cv-891, 2009 U.S. Dist. LEXIS 32222, at *2 (D. Utah April 15, 2009) ("A claim for breach of contract is a state law claim and this court applies the common law of the state of Utah.").  It is also worth noting that the Final Documents include a choice of law provision indicating that the Final Documents "shall be interpreted, construed, and enforced in accordance with and governed by the laws of the state of Utah."  Docket no. 105, Exhibit 5.

That notwithstanding, and putting enforceability issues aside, the court has determined that Plaintiff is not entitled to specific performance of either the Settlement Agreement or the Final Documents. "Specific performance is an equitable remedy, and accordingly, the trial court is granted wide discretion in applying and formulating it. Further, a party seeking equity must do so with clean hands. Specific performance will not be granted to a plaintiff who is unable or unwilling to perform." *LHIW, Inc. v. DeLorean*, 753 P.2d 961, 963 (Utah 1988) (citations omitted); *see also Fischer v. Johnson*, 525 P.2d 45, 46-47 (Utah 1974) ("[S]pecific performance is a remedy of equity; and one who invokes it must have clean hands in having done equity himself. That is, he must take care to discharge his own duties under the contract; and he cannot rely on any mere inconvenience as an excuse for his failure to do so. Even if inconvenience or difficulty is encountered, he must make an effort to perform, or to tender performance, which manifests reasonable diligence and a bona fide desire to keep his own promises." (footnote omitted)); 71 Am. Jur. 2d *Specific Performance* § 4 (2011); 12-64 Corbin on Contracts § 1168 (2011).

Both the Settlement Agreement and the Final Documents require Plaintiff to transfer her shares in Equine Holdings upon payment of the first $75,000. Plaintiff does not dispute that she received the first $75,000 payment, but she also admits that she has not transferred her shares in Equine Holdings. Without expressing an opinion as to the enforceability of either agreement, even if the court assumes for the sake of argument that both agreements are enforceable, the court concludes that the doctrine of unclean hands prevents Plaintiff from obtaining specific performance of either agreement. Accordingly, Plaintiff's motion to enforce is denied.

5

Finally, the court addresses Plaintiff's request for attorney fees and costs pursuant to the terms of the Final Documents. The Final Documents provide that "[i]f any action is brought to enforce or construe the terms of [the Final Documents], the Party prevailing in that action shall be entitled to recover from the Party not prevailing all of its/their reasonable costs, expenses, and attorneys' fees incurred in that action."[9] Again, the court expresses no opinion about whether the Final Documents are enforceable; but, even assuming for the sake of argument that they are enforceable, Plaintiff is not the prevailing party here because her motion has been denied. Consequently, her request for an award of attorney fees and costs must likewise be denied.

## CONCLUSION AND ORDER

In summary, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion to enforce[10] is **DENIED**.

2. Plaintiff's request for attorney fees and costs is **DENIED**.

**IT IS SO ORDERED**.

DATED this 2nd day of November, 2011.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[9] Docket no. 105, Exhibit 5.

[10] *See* docket no. 104.